■ Thomas & Betts Corporation, Respondent, v Hunt Engineers, Architects and Land Surveyors, P.C., et al., Defendants, and Welliver McGuire, Inc., Appellant. [740 NYS2d 523] —Mercure, J. Appeal from an order of the Supreme Court (Castellino, J.), entered February 20, 2001 in Chemung County, which, inter alia, denied a motion by defendant Welliver McGuire, Inc. for summary judgment dismissing the complaint against it.

Plaintiff, a manufacturer of telecommunication connectors, entered into a contract with defendant Welliver McGuire, Inc. (hereinafter defendant) for the construction of two pre-engineered metal buildings as an addition to plaintiff's existing facility in the Town of Horseheads, Chemung County. The first of those buildings, which is at issue here, was originally

designed with a roof pitch of one-quarter inch of vertical rise over each 12 inches of horizontal run ($\frac{1}{4}$:12). As constructed, the building actually had a roof pitch four times as steep (1:12). An undesirable effect of the enhanced roof pitch was that, at the location where the two buildings were joined, the gable end of the new building was approximately 10 to 12 feet higher than the adjacent eave end of the existing building. That elevation differential placed additional loads on the existing building as the result of blowing and drifting snow and required plaintiff to expend approximately $675,000 to reinforce its roof. Alleging defendant's breach of contract in deviating from the contract specifications, plaintiff brought this action to recover that sum.*

Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint against it on the ground that the change in roof pitch was actually ordered by plaintiff or that plaintiff in any event acquiesced in the change and thereby waived its right to insist upon strict adherence to the contract specifications. Supreme Court denied the motion and defendant appeals. We agree with Supreme Court's conclusion that the parties' conflicting affidavits and deposition testimony raised questions of fact concerning the time and origin of the change in the roof pitch and whether plaintiff was aware of the consequences of such change on the structural integrity of the existing building. We accordingly affirm its order denying defendant's summary judgment motion.

Joseph Haas, who was plaintiff's initial project coordinator, stated that no one consulted him about the change in the roof pitch and its resulting impact on the existing building. According to Haas, the issue did not come up until the steel columns for the new building had already been set against the existing building, revealing the higher peak. Haas also stated that when he questioned defendant's representative in July 1997 about the change, he was informed that Steelox either would not or could not manufacture a building with a $\frac{1}{4}$:12 pitch.

According to defendant, Haas authorized the change in a fax he sent in February 1997 with a written notation indicating that all roofs were to be 1:12. Confronted with the fax, Haas acknowledged that the handwriting looked like his but stated that he did not recall sending such a fax and flatly denied

---

* Causes of action asserted against defendant Steelox Systems, Inc., the subcontractor that actually fabricated the buildings, and defendant Hunt Engineers, Architects and Land Surveyors, P.C., the firm that engineered the structural loading requirements of the buildings, have been discontinued or dismissed and are not at issue on this appeal.

directing the change in roof pitch. Further, although defendant contends that the roof problem was discussed at a March 21, 1997 project meeting, two of plaintiff's employees who were present at that meeting deny that any such discussion took place. John Tallis, who replaced Haas as project manager, testified that he became aware of the problem during a contractor's meeting in late July or August 1997 and at that time requested a structural analysis to determine "if [he] was in trouble" with regard to the snow load. Additional difficulty arises out of the fact that the contract between plaintiff and defendant was not executed until July 1997, by which time the new building had been largely constructed and the roof pitch problem was patent.

In our view, the foregoing evidence raises genuine factual issues concerning plaintiff's direction of or acquiescence in the changed roof pitch or plaintiff's subsequent waiver of its right to insist upon strict adherence to the original contract specifications (*see, Cawley v Weiner*, 236 NY 357, 362).

Cardona, P.J., Crew III, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.